William A. Rossbach
ROSSBACH LAW, P.C.
401 North Washington St.
Missoula, MT 59807-8988
Phone:  (406) 543-5156
bill@rossbachlaw.com

David S. Muraskin
PUBLIC JUSTICE, P.C.
1620 L St. NW, Suite 630
Washington, DC 20036
Phone:  (202) 861-5245
dmuraskin@publicjustice.net

J. Dudley Butler
BUTLER FARM & RANCH LAW GROUP, PLLC
499-A Breakwater Dr.
Benton, MS 39039
Phone:  (662) 673-0091
jdb@farmandranchlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| RANCHERS-CATTLEMEN ACTION LEGAL FUND, UNITED STOCKGROWERS OF AMERICA, Plaintiff, v. TOM VILSACK, IN HIS OFFICIAL CAPACITY AS SECRETARY OF AGRICULTURE, AND THE UNITED STATES DEPARTMENT OF AGRICULTURE, Defendants. | Case No.  CV-16-41-GF-BMM-JTJ **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE STAY THE CASE & PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR A PRELIMINARY INJUNCTION** |
| --- | --- |

# **TABLE OF CONTENTS**

Table of Contents ..................................................................................... i

Table of Authorities ................................................................................ ii

   **I.**    INTRODUCTION AND SUMMARY OF ARGUMENT ..................... 1

   **II.**    BACKGROUND ..................................................................... 5

   **III.**   STANDARD OF REVIEW ...................................................... 11

   **IV.**   ARGUMENT ......................................................................... 13
       A. The administration of the Beef Checkoff in Montana violates the
           First Amendment .............................................................. 13
          1. *Johanns* and the Government speech doctrine are inapplicable. 15
       B. The Government's new policy has no effect ...................... 17
       C. The Government's attacks on Plaintiff's complaint are meritless ..... 20
       D. Plaintiff has standing to bring its claim .......................... 21
       E. Plaintiff is entitled to an injunction ................................ 27

   **V.**    Conclusion ........................................................................ 28

Certificate of Compliance ...................................................................... 30

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                    <u>**Page No**</u>.

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)........... 12

*Arcia v. Florida Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) ............... 25

*Associated Gen. Contractors of Am. v. California Dep't of Transp.*,
 713 F.3d 1187 (9th Cir. 2013) ........................................................... 24

*Barrett v. Premo*, 101 F. Supp. 3d 980 (D. Or. 2015) ................................ 12,27

*Bd. of Regents v. Southworth*, 529 U.S. 217 (2000) ................................... 16

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*,
 452 F. Supp. 2d 924 (N.D. Cal. 2006)............................................... 24

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) .................................................. 18

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977).... 23

*In re Washington State Apple Advert. Comm'n*, 257 F. Supp. 2d 1274
 (E.D. Wash. 2003) ........................................................ ..16,17,20,22,27,28

*Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961) ........................... 18

*Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005) ............................. passim

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009).................... 12,27

*Knox v. Serv. Employees Int'l Union, Local 1000*,
 132 S. Ct. 2277 (2012).........................................................4,17,18,19,20,22

*Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*,
 338 F. Supp. 2d 1129 (D. Mont. 2004) ............................................. 5

*Mitchell v. Los Angeles Unified School District*, 963 F.2d 258
 (9th Cir. 1992)................................................................................. 19

*Montana Fair Hous., Inc. v. City of Bozeman,*
No. CV 09-90-BU-RFC-CSO, 2011 WL 7279295,
(D. Mont. Dec. 7, 2011)........................................................ 26

*Montana Fair Hous. v. City of Bozeman,* No. CV 09-90-BU-DLC,
2012 WL 461814  (D. Mont. Feb. 13, 2012)................................... 26

*Peterich v. Dr. McGree/St. James Hosp.*, No. CV 15-65-BU-BMM-JCL,
2016 WL 552684 (D. Mont. Feb. 10, 2016)..................................... 28

*R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906 (9th Cir. 2005) .......... 2,13

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at
Broadlands*, LLC, 713 F.3d 175 (4th Cir. 2013) .............................. 24

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................ 21

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ....................... 23

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009)........................... 23

*Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 322 F.3d 1039
(9th Cir. 2003).................................................................. 11

*United States v. United Foods, Inc.*, 533 U.S. 405 (2001) ......................... passim

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013)............ 25

## Federal Statutes

*Beef Promotion and Research Order*, 51 Fed. Reg. 26132,
(July 18, 1986) ................................................................. 9

*Soybean Promotion, Research, and Consumer Information; Beef
Promotion and Research; Amendments To Allow Redirection of
State Assessments to the National Program; Technical
Amendments*, 81 Fed. Reg. 45984 (July 15, 2016).......................... 9,18

Fed. R. Civ. P. 56(b) .......................................................... 12

7 C.F.R. § 1260 ..............................................……. 6,7,8,9,17

7 U.S.C. § 2901 ......................................................................... 5,7

7 U.S.C. § 2904 ..................................................................... 6,9,17

**Other Authorities***:*

Montana Beef Council & Wendy's of Montana, *Fun MT Beef Council & Wendy's Partnership*, (Feb. 21, 2014) ......................................... 10

*Montana Beef Checkoff Directors Set Work Plan for Upcoming Fiscal Year* (Sept. 29, 2015) ......................................................... 10

Ruhland, Polly, *Obligation to Redirect Assessments Upon Producer Request if Not Precluded by State Law* (July 29, 2016)................... 4

Bechtel, Wyatt, AgWeb, *Wendy's Maintains Focus on Quality Beef from North America,* (Feb. 19, 2016) ......................................... 10,26

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The governing statutes, regulations, and public records, along with the Government's own Motion, establish that the federal Beef Checkoff program requires Plaintiff's members to fund the private Montana Beef Council and its speech, to which they object.  This violates their First Amendment rights, particularly their freedoms of speech and association.  Thus, Plaintiff opposes the Government's Motion, and further moves for summary judgment in the form of declaratory and injunctive relief, or, should the Court deny summary judgment, a preliminary injunction.

Plaintiff, the Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of America ("R-CALF"), represents independent, domestic cattle producers.  The federal Beef Checkoff program requires all cattle producers, including R-CALF's members, to pay "a $1-per-head assessment … each time cattle are sold."  Mem. in support of Gov. Motion, Dkt. No. 19-1 ("MTD") 1.  However, in Montana, that assessment is not collected by the federal Government, but "a qualified State beef council …, which forwards 50 cents to the [federal] Cattlemen's Beef Promotion and Research Board ('Beef Board') and retains the remaining 50 cents."  *Id.*  Put another way, the Montana Beef Council automatically deems 50 cents of every dollar producers are forced to pay a "voluntary" contribution to the council's

"activities," without actually receiving permission to keep or use those funds.  *Id.* at 5-6.

The Montana Beef Council is a private corporation.  Statement of Undisputed Fact ("SUF") Ex. 7.  It is not created by state law or regulation nor is there a "state law or regulation" that requires contributions to it.  *See* MTD 8-9.

The Montana Beef Council uses the money it collects to fund advertising that promotes generic beef consumption; advertising that fails to distinguish between domestic products like those produced by R-CALF's members and international beef.  This constitutes speech.  *See*, *e.g.*, *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 916 (9th Cir. 2005) (an "assessment … to pay for generic advertising" implicates First Amendment (quotation marks omitted)).

Under *United States v. United Foods, Inc.*, 533 U.S. 405 (2001), a Supreme Court case concerning the federal Mushroom Checkoff—an essentially identical commodity promotion program to the Beef Checkoff—this sort of compelled payment to a *private* entity to fund its *private* speech violates the First Amendment.  *See also Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 558 (2005) (explaining the Mushroom Checkoff is equivalent to the Beef Checkoff).  "Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government … from compelling certain individuals to pay subsidies for speech to which they object."  *United Foods*, 533 U.S. at 410

(citations omitted).  R-CALF's members object to funding the private Montana Beef Council, believing consumers should be encouraged to prefer domestic beef over other beef.  "[M]andated support" of a private entity, like the Montana Beef Council, to generate speech to which the payer objects, "is contrary to the First Amendment."  *Id.* at 413.

Failing to discuss *United Foods*, the Government instead cites *Johanns*. But, *Johanns* has no bearing here.  It held that the Government can compel individuals to fund *Government* speech, which it defined as speech that the Government controls.  *Johanns* did not alter the prohibition on compelling individuals to fund private entities to engage in private speech.  *Johanns*, 544 U.S. at 559 ("[C]ompelled support of a private association is fundamentally different from compelled support of government."  (quotation marks omitted)).

The Government suggests it can avoid the prohibition on compelled subsidies of private speech based on its new policy and proposed rule—issued following this suit.  That policy and proposed rule allow Montana producers to request that the Montana Beef Council turn over to the federal Government the money the council automatically takes from producers' checkoff payments.  Yet, the default remains that the Montana Beef Council can take half of producers' checkoff payments without the producers' consent.  The Montana Beef Council merely must "redirect" the half of the checkoff funds it has "held," once it

determines the producer's request "meets documentation requirements."  Polly Ruhland, *Obligation to Redirect Assessments Upon Producer Request if Not Precluded by State Law* (July 29, 2016) ("Ruhland Memo").[1]

This is the exact opposite of what the Constitution requires.  Where the First Amendment does not permit an "extract[ion] … from [an] unwilling" participant "there is no way to justify the additional burden of imposing [an] opt-out requirement."  *Knox v. Serv. Employees Int'l Union, Local 1000,* 132 S. Ct. 2277, 2292-93 (2012).  Instead, there must be "affirmative consent" *before* the money is turned over to a private entity to fund private speech.  *Id.* at 2296.  The First Amendment does not allow a private entity to even temporarily "extract a loan from an unwilling" funder.  *Id.* at 2292-93.

For these reasons, the Government's primary attack on Plaintiff's complaint, that it fails to discuss the Government's new policy, is meritless.  The agreed upon facts, that Montana beef producers are currently, at least temporarily, "being required to subsidize" the private Montana Beef Council and its "private speech with which they disagree," are sufficient to plead and, indeed, establish "a plain violation of the First Amendment."  *See*, *e.g.*, Complaint, Dkt. No. 1, ¶ 10 (citing *United Foods*).

---

[1] http://www.beefboard.org/library/files/redirection-memo-072916.pdf (last visited Aug. 20, 2016).

The Government's additional argument, that Plaintiff needed to plead additional details regarding standing, is wrong at the pleadings stage and is now moot because Plaintiff has submitted declarations establishing standing.  *See Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.,* 338 F. Supp. 2d 1129, 1131 (D. Mont. 2004) (courts "may rely on factual evidence to determine whether they have jurisdiction").

The Government confesses that the true purpose of its Motion is to delay this suit "pending completion of the ongoing rulemaking," meant to formalize its new, opt-out policy.  MTD 12.  However, delay would only allow the First Amendment violation that occurs each time the private Montana Beef Council is allowed to take producers' money—that is, each time the new policy and proposed rule are carried out—to continue.  Thus, this Court should provide declaratory and injunctive relief or, at the least, a preliminary injunction to prevent Montana producers from funding the Montana Beef Council without first providing their affirmative consent.

## II.   <u>BACKGROUND</u>

The exclusive function of the federal Beef Checkoff is to "finance (through assessments on all cattle sold in the United States and on cattle, beef, and beef products imported into the United States)" a "program of promotion and research designed" to increase overall beef consumption.  7 U.S.C. § 2901(b).  The federal

commodity "checkoff" programs, of which the Beef Checkoff is one example,

"us[e] special subsidies exacted from a designated class of persons"—all producers

of a particular good—to promote increased consumption of that good. *United*

*Foods*, 533 U.S. at 410.

At the federal level, there are two bodies that manage the Beef Checkoff

funds, both of which are extensively supervised by the Secretary of Agriculture.

The Secretary of Agriculture appoints the Beef Board to "administer" the program,

such as reviewing the budget. *See* 7 U.S.C. § 2904(2). The Beef Board then elects

half its members to serve on the Beef Promotion Operation Committee ("Beef

Committee"). 7 U.S.C. § 2904(4)(A). The Beef Committee develops the "plans or

projects of promotion and advertising, research, consumer information, and

industry information, which [are] paid for with assessments collected by the [Beef]

Board." *Id.* § 2904(4)(B). All members of the Beef Board and Beef Committee

can be removed by the Secretary. 7 C.F.R. § 1260.213.

In addition to overseeing the personnel, the Secretary is also involved in all

of their activities. The Secretary must approve the budget set by the board, as well

as any decision to withhold "disbursement" of funds. 7 U.S.C. § 2904(4)(C), (9).

A representative of the Secretary attends all board meetings. Complaint Ex. A,

Dkt. No. 1-1, at 11. The Secretary also "approv[es] any plans and projects for

promotion, research, consumer information and industry information"

recommended by the Beef Committee.  7 C.F.R. § 1260.169.  "All proposed promotional messages" of the Beef Committee "are reviewed by Department [of Agriculture] officials both for substance and for wording, and some proposals are rejected or rewritten by the Department."  *Johanns*, 544 U.S. at 561.

In a state like Montana, however, the Beef Checkoff dollars are not collected by the federal Government, but a qualified state beef council.  *See* 7 C.F.R. § 1260.181.  To be a "qualified" state beef council the federal Government must confirm that the council engages in "plans and projects for promotion, research, consumer information and industry information."  *Id.* § 1260.181(b)(1) (cross–referencing 7 C.F.R. § 1260.169); *see also* 7 U.S.C. § 2901(b) (explaining Beef Checkoff money can only be used to generate such speech).

The "qualification" also confirms that the state beef council will collect the funds required by the Beef Checkoff and "remit to the [federal Beef] Board" the appropriate amount, 7 C.F.R. § 1260.181(b)(2)-(4); that is, the total $1 per head federal assessment, minus what the producer has been deemed to "contribut[e] to [the] qualified State beef council[]," "not to exceed 50 cents per head of cattle," *id.* § 1260.172(a)(3).  As the United States Department of Agriculture Office of Inspector General has explained, in practice this means that "Qualified State beef councils [] collect the [$1 federal] domestic assessments and are responsible for forwarding half of the funds each month to the [B]eef [B]oard, which manages the

national program."  Complaint Ex. C, Dkt. No. 1-3, at 2.  The qualified state beef

council keeps the other half.

This is the crux of the litigation, as the Beef Checkoff currently operates, 50

cents of every $1 the Montana Beef Council collects is labeled a "voluntary

assessment or contribution," which the council is allowed to use, even though no

producer volunteers to provide the council that money.  *See* 7 C.F.R. § 1260.115.

In fact, the Beef Checkoff does not have "language allowing producers to choose

not to contribute" to the state beef council.  Ruhland Memo.  The Government

expressly "removed" such language from the regulations in 1995.  *Id.*; MTD 7.

Under the new policy and proposed rule, in Montana, because the state does

not have *any* law requiring *any* payments to the state beef council, the council

"must honor [a] request" to "redirect" the producer's funds from the council to the

federal Government "if the request meets documentation requirements."  Ruhland

Memo; MTD 8-9.  The state beef council still acts as the point of collection.  *See*

Ruhland Memo.  More importantly, it still *automatically* "h[olds]" half of each

producer's checkoff payment as a so-called voluntary contribution.  *Id.*  This is

done without the producer's consent and until the council determines that the

producer has carried the newly-imposed burden to opt-out of funding the council.

*Id.*  Further, the council has 60-days to review the producer's opt-out paperwork—

which must be submitted every month following a payment.  Soybean Promotion,

Research, and Consumer Information; Beef Promotion and Research; Amendments To Allow Redirection of State Assessments to the National Program; Technical Amendments ("Amendments"), 81 Fed. Reg. 45984, 45986 (July 15, 2016).  As a result, the council can hold producers' money for over 100 days, even if the producers opt-out.  *Id.*; *see also* SUF No. 45.

Unlike with the Beef Board and Beef Committee, there is no federal supervision of how the state beef councils spend the money they receive from the Beef Checkoff.  Indeed, the federal Government expressly rejected requests that it establish rules to "ensure that the monies received" by the state beef councils "under the Act are spent in accordance with the Act."  Beef Promotion and Research Order, 51 Fed. Reg. 26132, 26137 (July 18, 1986).  Instead, the Government stated the one-time qualification and "an annual report prepared by a certified public accountant" totaling the amount of "funds" the state beef councils collect is sufficient federal supervision.  *Id.*  The Government's Motion asserts there is federal "supervision" of the state beef councils, but it only cites rules establishing the councils can keep 50 cents of every $1 collected.  MTD 6 (citing *Johanns*, 544 U.S. 554 n.1; 7 U.S.C. § 2904(8)(C); 7 C.F.R. § 1260.172(a)(3)).

Any system in which Montana producers are, even temporarily, forced to fund the Montana Beef Council has significant consequences.  The Montana Beef Council is an entirely private entity and thus not accountable to Montana

producers.  SUF Ex. 7.  In fact, Plaintiff has established at least five of the twelve

council board members are directly connected to the National Cattlemen's Beef

Association, the national lobbying group of multinational cattle companies.  SUF

Ex. 1 ¶ 15.  The council's activities are based exclusively on the "deliberations" of

this group.  *Montana Beef Checkoff Directors Set Work Plan for Upcoming Fiscal

Year* (Sept. 29, 2015).[2]

Thus, for example, in 2014, the advertisements the Montana Beef Council

"funded through Montana's 50 cent in-state portion of the $1 per head [federal]

checkoff" promoted the interests of multinational companies.  *Id*.  The council

entered into a "'partnership'" with the fast-food chain Wendy's to advertise

Wendy's Bacon Ciabatta Cheeseburger.  MT Beef Council & Wendy's of

Montana, *Fun MT Beef Council & Wendy's Partnership* (Feb. 21, 2014).[3]  The

council did this even though Wendy's uses *North American* beef, which can come

from any country on the continent.  Wyatt Bechtel, *Wendy's Maintains Focus on

Quality Beef from North America*, AgWeb (Feb. 19, 2016).[4]

---

[2] https://mtbeef.org/montana-beef-checkoff-directors-set-work-plan-for-upcoming-fiscal-year/ (last visited Aug. 21, 2016).

[3] http://www.backup.northernag.net/AGNews/tabid/171/articleType/ArticleView/articleId/8961/Fun-MT-Beef-Council-Wendys-Partnership.aspx (last visited Aug. 21, 2016)

[4] http://www.agweb.com/article/wendys-maintains-focus-on-quality-beef-from-north-america-naa-wyatt-bechtel/ (last visited Aug. 21, 2016).

Because R-CALF only represents domestic cattle producers, advertisements that promote international beef work against it and its members' interests. *See*, *e.g.* SUF Ex. 1 ¶ 9. R-CALF and its members believe that if consumers are encouraged to examine the differences between domestic and international beef they will prefer beef produced in the United States and subject to its standards. *See*, *e.g.*, *id.* Accordingly, they object to the advertisements the Montana Beef Council funds with their Checkoff dollars. SUF Ex. 1 ¶¶ 9-10; SUF Exs. 2-5 ¶¶ 8-10. They instead promote campaigns that urge consumers to "Demand USA Beef." SUF Ex. 1 ¶ 11; SUF Exs. 2-5 ¶ 11.

R-CALF's members further object to the fact that the advertisements are determined by the private Montana Beef Council. SUF Exs. 2-5 ¶ 8. One of R-CALF's functions is to engage in traditional political advocacy on behalf of its members, but, because the council is private, R-CALF has had to spend additional resources to try to exert influence in other ways, which have proven less effective. SUF Ex. 1 ¶¶ 12-21. The compelled funding of the council harms R-CALF and its members.

## III.   STANDARD OF REVIEW

If "the only disputes relate to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 322 F.3d 1039,

1046 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(b) (allowing motions for summary judgment "at any time").  Where it is established that, based on the undisputed facts, there is an ongoing violation of "Plaintiff's First Amendment rights[,] Plaintiff is entitled to declaratory judgment and a permanent injunction enjoining" that conduct.  *Barrett v. Premo*, 101 F. Supp. 3d 980, 997-1000 (D. Or. 2015) (explaining equitable considerations connected with an injunction—the presence of an irreparable injury, the inadequacy of damages, the balance of equities, and the public interest—generally "merge[]" with the merits where the First Amendment is at issue).

Even if the Government were to shift course and successfully generate a dispute of material fact preventing summary judgment, a preliminary injunction is appropriate if Plaintiff "is likely to succeed on the merits," "likely to suffer irreparable harm in the absence of preliminary relief," "the balance of equities tips in [its] favor," and "an injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quotation marks omitted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Ninth Circuit "case law clearly favors granting preliminary injunctions to a plaintiff … who is likely to succeed on the merits of [its] First Amendment claim." *Klein*, 584 F.3d at 1208.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" and there is

a "significant public interest in upholding free speech principles" so "[t]he balance of equities and the public interest [] tip sharply in favor of enjoining" the law.  *Id.* (quotation marks omitted).

## IV.   ARGUMENT

### A. The administration of the Beef Checkoff in Montana violates the First Amendment.

In *Johanns*, which reviewed the federal Beef Checkoff program, the Supreme Court stated that the Beef Checkoff's exactions are governed by First Amendment law concerning "compelled-speech," which has been "carried over to certain instances in which individuals are compelled not to speak, but to subsidize a private message with which they disagree."  544 U.S. at 557.  Under this authority, to the extent the checkoff "'compel[s] support of a private association,'" that violates the First Amendment.  *Id.* at 559 (quoting *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977)).  This is exactly what is occurring in Montana.

With the checkoff programs, unlike other types of federal exactions, the First Amendment fully applies and limits how the money can be spent.  While the First Amendment creates no barriers to the Government imposing a tax to fund "'comprehensive program[s]'" where the generation of speech is "'ancillary'" to carrying out "broader regulation," the checkoffs are not such programs.  *R.J. Reynolds Tobacco Co.*, 423 F.3d at 916 (quoting *United Foods,* 533 U.S. at 411). Because the exclusive function of the checkoffs is to fund "promotion, research,

consumer information, and industry information" "advertising itself, far from being ancillary, is the principal object of the regulatory scheme." *United Foods*, 533 U.S. at 408, 411-12 (quotation marks omitted) (discussing the Mushroom Checkoff); *see also Johanns*, 544 U.S. at 558-59 (indicating "the only regulatory purpose" of the Beef Checkoff is "the funding of the advertising" not any "'broader regulatory scheme'" (quoting *United Foods*, 533 U.S. at 415)).  Thus, "the compelled funding for the advertising must pass First Amendment scrutiny." *United Foods*, 533 U.S. at 411.

In particular, the payments mandated by the checkoffs must comply with the First Amendment's protections against compelled expressions and compelled associations.  *United Foods*, 533 U.S. at 410, 413.  Combined these rights create a "'recognized [] First Amendment interest in not being compelled to contribute to an organization whose expressive activities conflict with one's 'freedom of belief.'"  *Id.* at 413 (quoting *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457, 471 (1997)).

Therefore, the First Amendment prohibits the checkoffs from requiring producers to fund private entities, like the Montana Beef Council, to carry out the checkoff's advertising if the producers object to the message.  In *United Foods*, "the speech" funded by the checkoff "was, or was presumed to be, that of an entity other than the government itself," *i.e.*, by a private entity like the Montana Beef

Council.  *Johanns*, 544 U.S. at 559 (citing *United Foods*, 533 U.S. 417-18 and other cases).  On this basis, the Court stated simply, "the assessments are not permitted under the First Amendment."  *United Foods*, 533 U.S. at 416.  Indeed, the plaintiffs in *United Foods* presented the same harm that R-CALF and its members present here, that they "want[ed] to convey the message that [their] brand of [product] [is] superior to those grown by other producers" and they objected to having to help fund a message that all types of the product "are worth consuming." *Id.* at 411.  The Court concluded that if that message is conveyed by a private entity, "First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for [such] speech."  *Id.* at 411.  Therefore, R-CALF's members' objection to being compelled to fund the private Montana Beef Council establishes a clear constitutional violation.

> 1.  *Johanns* and the Government speech doctrine are inapplicable.

*Johanns*, 544 U.S. 550, the case on which the Government relies, does nothing to alter the above principles or conclusion.  Indeed, *Johanns* holds that "Citizens *may* challenge compelled support of *private speech*, but have no First Amendment right not to fund *government speech*."  *Id.* at 562 (emphasis added).  It explains that because there is no constitutional prohibition on being compelled to associate with and support the Government, there is no limitation on the

Government collecting taxpayers' money for its own "speech and other expressions." *Id.* at 559. When the Government speaks the First Amendment does not provide protections because there is "democratic[] accountability." *Id.* at 563 (citing, in part, *Bd. of Regents v. Southworth*, 529 U.S. 217, 235 (2000)). Citizens can use "elect[ions]" and the "political process" to demand a "different or contrary position." *Southworth*, 529 U.S. at 235.

It is on this basis that cattle producers have been compelled to fund the federal Beef Board and Beef Committee, but it is also plain that *Johanns* cannot authorize the compelled funding of the private Montana Beef Council. As the Government concedes, *Johanns* did not "address" the money that went to the state beef councils. MTD 9-10. *Johanns* held that what made the speech of the federal Beef Board and Beef Committee Government speech was "The message set out in the beef promotions is from beginning to end the message established by the Federal Government." 544 U.S. at 560; *see also* MTD 9 (stating substantially the same). It was not simply that the Government establishes the "overarching" objective for the Beef Checkoff, but the Secretary of Agriculture also "exercises final approval authority over every word used in every" federal campaign, and federal officials "participate" throughout their development. *Id.* at 561; *see also In re Wash. State Apple Advert. Comm'n,* 257 F. Supp. 2d 1274, 1282 (E.D. Wash. 2003) (rejecting a claim of Government speech because "the government retains no

authority to edit, change, or censor the speech").  Unlike with the Beef Board and Beef Committee, there are no statutory or regulatory mechanisms for the federal Government to have any input in, let alone "approve" "every word" of the Montana Beef Council's campaigns.  *See* MTD 6 (citing *Johanns*, 544 U.S. at 554 n.1; 7 U.S.C. § 2904(8)(C); 7 C.F.R. § 1260.181(a)(3)).

Thus, *United Foods* controls this case and the compelled subsidy of the private Montana Beef Council is unconstitutional.  There is no "political[] accountability" for the Montana Beef Council's expressions.  *Johanns*, 544 U.S. at 563.  Therefore, there is no basis for the Government to contend *Johanns* allows Plaintiff's members to be forced to fund the council and its speech.

**B.    The Government's new policy has no effect.**

The Government claims there is no First Amendment violation because a Montana producer can now submit a "redirection request" to the state beef council, which would require the council to "forward" the producer's Beef Checkoff dollars that the council has retained to the federal Beef Board and Committee.  MTD 7, 20.  This argument has been expressly rejected.  The "temporary collection" of an assessment like that imposed by the Beef Checkoff, by a private entity "is an invasion on the dissenter's constitutional[] rights."  *In re Wash. State Apple Advert. Comm'n*, 257 F. Supp. 2d at 1288; *see also Knox*, 132 S. Ct. at 2293 (where exaction violates First Amendment "there is no way to justify" "opt-out

requirement").  Under the Government's policy, the default continues to be that producers pay money to the private Montana Beef Council, a portion of which the council may hold until the council determines the producer has successfully requested that the money be redirected.  Producers can be required to fund the state council for over 100 days without their consent.  *See* Amendments, 81 Fed. Reg. at 45986; *see also* SUF No. 45.  Thus, the policy does not alter the First Amendment violation from having to fund the private Montana Beef Council.  *Knox*, 132 S. Ct. at 2292-92 ("First Amendment does not permit" private entity to "extract a loan" to fund speech even if it "is later paid back in full.").

The 1961 authority on which the Government relies to claim that its opt-out regime "complies with the First Amendment," MTD 21 n. 2 (citing *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961)), does not support this proposition.  The Supreme Court recently explained "*Street* was not a constitutional decision at all" and thus cannot speak to the First Amendment limitations on compelled subsidies. *Harris v. Quinn*, 134 S. Ct. 2618, 2632 (2014).  Further, the Court has rejected the statement for which the Government cites *Street*—that the Government can impose an opt-out regime because it can assume a payer will consent to the payments. MTD 21 n.2 (quoting *Street*, 367 U.S. at 774).  Characterizing such language from *Street* as an "offhand remark" that did not "consider the broader constitutional implications of an affirmative opt-out requirement," *Knox* concluded the opposite,

that courts may "'*not* presume acquiescence in the loss of fundamental rights.'"

132 S. Ct. at 2290 (emphasis added) (quoting *College Sav. Bank v. Fla. Prepaid*

*Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 682 (1999)).  An opt-out regime is

not allowed.

   The Government's other authority, *Mitchell v. Los Angeles Unified School*

*District*, 963 F.2d 258, 259 (9th Cir. 1992), concerned the constitutionality of an

opt-out scheme for "normal union membership dues," which primarily funded

"representational activities."  *Knox* expressly distinguished this type of payment

from compelled subsidies like those required by the checkoffs, which exclusively

fund speech.  132 S. Ct. at 2289 (citing *United Foods*, 533 U.S. 414).  Because

"normal union dues" serve a "'larger regulatory purpose'" beyond funding speech,

there is more flexibility in how those dues can be collected.  *Knox*, 132 S. Ct. at

2289 (quoting *United Foods*, 533 U.S. at 414).  The Court has already ruled that

the checkoffs, including the Beef Checkoff, serve no broader regulatory function.

*Johanns*, 544 U.S. at 558-59; *United Foods*, 533 U.S. at 408, 411-12.  Moreover,

*Knox* held that when unions issue special assessments only meant to fund speech,

they can only exact "any funds" if they first obtain "affirmative consent" for those

payments.  *Id.* at 2296.  In reaching this conclusion, *Knox* analogized such special

assessments to the exactions imposed by the checkoffs.  *Id.* at 2289 (citing *United*

*Foods*, 533 U.S. 414).  Accordingly, the same rule must apply here, the private

Montana Beef Council cannot obtain any funds through the Beef Checkoff unless it first obtains affirmative consent from the payer.

Therefore, the Government's *existing* and proposed opt-out scheme is constitutionally insufficient.  The Government's statement that it may, at some point, "consider comments" on its current policy or further "explain its reasons for" it is entirely irrelevant.  MTD 23.  There is an ongoing constitutional violation and the Court should not wait for the agency to speak again to protect individuals' rights.

**C.     The Government's attacks on Plaintiff's complaint are meritless.**

For the reasons stated above, the Government's assertion that in light of the Government's new policy Plaintiff failed to state a claim or must "amend its complaint" is incorrect.  MTD 21.  The Complaint details how "[t]he dollars the federal Beef Checkoff mandates producers pay first go to [Montana's] Qualified State Beef Council, which siphons off half of those dollars for its own purposes." Complaint ¶¶ 47-50.  It further describes how "[t]he federal government exercises no control over the speech of the Montana Beef Council."  *Id.* ¶¶ 51-63, 75-78, 92. Plaintiffs and its members object to and do not consent to fund this private entity and its private speech.  *Id.* ¶¶ 5, 8-10, 17-23, 99.  Per *United Foods* and *Knox*, requiring objecting producers to, even temporarily, transfer their money to the private Montana Beef Council violates the First Amendment.  *See also In re Wash.*

20

*State Apple Advert. Comm'n*, 257 F. Supp. 2d at 1288.  Thus, Plaintiff's complaint states a claim.  *See*, *e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (complaint, "need only 'plausibly suggest an entitlement to relief.'" (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1955 (2009))).  Indeed, because the Government concedes these facts, Plaintiff has established an entitlement to relief.

> **D.      Plaintiff has standing to bring its claim.**

The Government also raises three challenges to Plaintiff's standing:  first, that Plaintiff and its members have not shown an injury because producers "may submit a request to the Montana Beef Council … to direct the full amount of their federal assessment to the [federal] Beef Board," MTD 15; second, that even if Plaintiffs have suffered an injury, it is not redressible through discontinuing payments to the Montana Beef Council because Plaintiff and its members have similar objections to the federal advertisements as they do to the advertisements of the Montana Beef Council, *id.* at 17-18; and third, that Plaintiff has not alleged sufficient detail to prove it has standing on behalf of (a) its members; or (b) itself, *id.* 14, 18-19.  Not only do these arguments lack merit, but they help create a record that Plaintiff is entitled to an injunction prohibiting the compelled subsidies of the Montana Beef Council.

The Government's first claim, that Plaintiff and its members have not suffered an injury, is a re-hash of its contention that Plaintiff failed to state a claim.

*Id.* 14-16.  As stated above, the Government's new policy requiring producers to pay into the Montana Beef Council and allowing that private council to hold a portion of producers' money until it determines that the producer has appropriately requested the money be forwarded to the federal Beef Board has no impact on the producers' established constitutional injury.  *See Knox*, 132 S. Ct. at 2296; *see also In re Wash. State Apple Advert. Comm'n*, 257 F. Supp. 2d at 1288.

In light of this law, the Government's second claim, that the injury is not redressible through an injunction against the compelled subsidies of the Montana Beef Council is specious.  The First Amendment prohibits assessments like those required by the Beef Checkoff to be paid to private entities like the Montana Beef Council.  *United Foods*, 533 U.S. at 413, 416.  The Court has held mandatory assessments to fund the Government for Government speech, like the speech generated by the federally controlled Beef Board and Beef Committee, do not violate the First Amendment because Government speech is "democratic[ally] accountab[le]."  *Johanns,* 544 U.S. at 563.  Thus, an injunction prohibiting the compelled subsidies of the private Montana Beef Council and immediately directing all of the money to the Beef Board and Beef Committee will entirely cure the established First Amendment injury.  In doing so, it will ensure federal political accountability for all of the payments and expenditures.  An injury is certainly

redressed if the relief would end an established constitutional violation and provide the required protections.

Finally, Plaintiff pled and has now established the facts demonstrating standing.  An association has standing on behalf of its members when "(a) its members would otherwise have standing to sue" (b) the suit is "germane to the organization's purpose" and "(c) neither the claim asserted nor the relief requested requires the participation of individual members," as is the case when "'the association seeks a declaration [or] injunction." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

The Government does not contest that Plaintiff pled these elements, it just argues that Plaintiff needed to specifically "name" the members who would have standing.  Again, this argument is directly contradicted by Supreme Court precedent.  A court "must presume that the general allegations in the complaint encompass the specific facts necessary to support" standing.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

The Government's cases demanding organizations identify particular members who were injured concern instances in which the case had progressed further and the plaintiff was required to come forward with evidence establishing standing, rather than allegations.  In *Summers v. Earth Island Institute*, the claims

were dismissed because the plaintiff did not establish during "adjudicate[ion] [on] the merits" that any of its members were injured, but rather relied on "statistical probability" to show it was likely its members were injured, 555 U.S. 488, 492, 497 (2009); *see also Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.,* 713 F.3d 1187, 1195 (9th Cir. 2013) (plaintiff lacked standing because it failed to identify members injured at *summary judgment*).  In *Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, the plaintiff failed to come forward with evidence regarding its members after the court "insist[ed] on such specificity" because the complaint was so "cryptic" it did not provide the defendants "some idea" on what basis the plaintiff alleged standing.  452 F. Supp. 2d 924, 934-35 (N.D. Cal. 2006); *accord S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013) (dismissing complaint where it *only* alleged *organization* was injured, did not allege "*any* … of its individual members" were harmed (emphasis in original)).  The Government seeks to create a magic words test for alleging membership standing that does not exist.

Regardless, here, Plaintiff has provided declarations establishing its members' standing.  Providing just a sample of the 375 Montana beef producers who R-CALF represents and who are forced to fund the private Montana Beef Council, the declarations establish (1) Plaintiff's members have paid and will

continue to pay the Beef Checkoff in Montana, and (2) they object to and have not consented to funding the Montana Beef Council because (a) the council is not democratically accountable, meaning R-CALF cannot effectively lobby for the producers' interests—one of the reasons the producers joined R-CALF—and (b) the council uses the Beef Checkoff money to fund speech that works against the interests of domestic producers and for multinational companies.  SUF Exs. 2-5; *see also* Complaint ¶¶ 5, 10, 15-21, 99 (pleading same).  No more is required.

Moreover, Plaintiff has also pled and established standing in its own right. "An organization has 'direct standing to sue [when] it show[s] a drain on its resources from both a diversion of its resources and frustration of its mission.'" *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (alteration in original) (quoting *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir.2012)).  Contrary to the Government's assertion, this does not mean R-CALF must show the constitutional violation caused R-CALF to spend money in a manner inconsistent with its mission.  MTD 18.  Rather, R-CALF need only establish it expended resources in response to the alleged unlawful conduct and, absent that conduct, it would have spent those resources in a different manner that it believes is more appropriate for its mission. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014) (organizations dedicated to "safeguarding voter rights" "diverted resources"

establishing standing when they "expended resources to locate and assist []
members to ensure [] they were able to vote"); *Mont. Fair Hous., Inc. v. City of
Bozeman,* No. CV 09-90-BU-RFC-CSO, 2011 WL 7279295, at *12-13 (D. Mont.
Dec. 7, 2011), report and recommendation adopted, No. CV 09-90-BU-DLC, 2012
WL 461814 (D. Mont. Feb. 13, 2012) (organization with "mission of promoting
equal housing opportunities" had standing because it "perform[ed] tasks intended
to counteract … allegedly unlawful housing practices").

　　As Plaintiff alleged and has now established, R-CALF regularly engages in
federal-level political advocacy on behalf of its members.  SUF Ex. 1 ¶ 8;
Complaint ¶ 19.  But, because its members must fund the private Montana Beef
Council and its speech, which is not democratically accountable, R-CALF has had
to employ alternative means to try to influence the council.  SUF Ex. 1 ¶¶ 13-21.
Complaint ¶¶ 21-22.  In particular, it has spent resources to try to publicize the
Montana Beef Council's partnership with Wendy's and thereby pressure it to
abandon that relationship.  SUF Ex. 1 ¶ 16; Complaint ¶ 22.  Had R-CALF's
members not been forced to fund the Montana Beef Council, R-CALF would not
have spent it resources in this manner and it would have put those resources
towards its national lobbying efforts, which would have done more to further R-
CALF's mission.  SUF Ex. 1 ¶¶ 17, 21; Complaint ¶ 22.  R-CALF is entitled to
expend its resources as it determines best.  The unconstitutional administration of

the Beef Checkoff in Montana has forced R-CALF to undertake activities it would not have otherwise, and accordingly, drained its resources.  It has standing in its own right.

### E.   Plaintiff is entitled to an injunction.

As discussed above, where, as here, a plaintiff has established an ongoing or likely First Amendment violation, courts typically hold that the equitable considerations connected with an injunction should be resolved in the plaintiff's favor.  *See Klein*, 584 F.3d at 1208.

However, even when courts parse those equitable considerations, they result in an injunction.  Because the collection of the checkoff's assessment violates the Constitution, each and every time producers are forced to pay into the system they suffer an "irreparable injury."  *In re Wash. State Apple Advert. Comm'n*, 257 F. Supp. 2d at 1288.  Since the Government's newly stated policy and proposed rule is expressly designed to continue to inflict this harm, by automatically giving over producer's money to the private Montana Beef Council, and demanding producer's opt-out of that system, the Court can be assured that an injunction is the only way to prevent further injuries.  Moreover, the "public interest favors entering [an] injunction" because it would not only protect Plaintiff's members, but all Montana producers, who are equally entitled to withhold funds from the council unless they affirmatively consent to make those payments.  *Barrett*, 101 F. Supp. 3d at 998.

Preventing the council's collections will potentially cause it "financial distress." *In re Wash. State Apple Advert. Comm'n*, 257 F. Supp. 2d at 1288.  Yet, the council was not entitled to this money in the first place.  Moreover, even if the Court were to conclude summary judgment is not yet appropriate, where, as here, the plaintiff has made substantial showings that the collection scheme is unconstitutional, the fact that an entity may be denied funds is not a basis to deny a preliminary injunction. *Id.* at 1289.  The Government is actively violating the First Amendment, which warrants this Court's immediate intervention.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny the Government's Motion. Instead, the Court should conclude the current administration of the Checkoff in Montana violates the First Amendment and grant Plaintiff summary judgement, issuing a declaration and permanent injunction that producers cannot fund the Montana Beef Council without first providing their affirmative consent.

Should the Court determine summary judgment is not yet warranted, it should, nevertheless, issue a preliminary injunction.

Finally, to preserve its rights, should the Court agree with any of the Government's attacks on Plaintiff's Complaint, Plaintiff would request the right to amend. *Peterich v. Dr. McGree/St. James Hosp.*, No. CV 15-65-BU-BMM-JCL,

28

2016 WL 552684, at *1 (D. Mont. Feb. 10, 2016) (Morris, J.) (providing right to amend after decision granting Motion to Dismiss).

RESPECTFULLY SUBMITTED this 24th day of August, 2016.

ROSSBACH LAW, PC

By:  ____/s/ William A. Rossbach_____
      William A. Rossbach

David S. Muraskin
PUBLIC JUSTICE, P.C.
1620 L St. NW, Suite 630
Washington, DC 20036

J. Dudley Butler
BUTLER FARM & RANCH LAW GROUP,
PLLC
499-A Breakwater Dr.
Benton, MS 39039

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)

I HEREBY CERTIFY that this Response Brief consists of  6,475 words, excluding the caption, certificates of service and compliance, table of contents and authorities.  It is further represented that the word count referred to has been calculated in reliance upon the Microsoft Word system utilized to prepare this Response Brief.

/s/      William A. Rossbach

30