# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

RANCHERS-CATTLEMEN ACTION
LEGAL FUND, UNITED
STOCKGROWERS OF AMERICA,

Plaintiff,

vs.

SONNY PERDUE, in his official
capacity as Secretary of Agriculture;
and UNITED STATES
DEPARTMENT OF AGRICULTURE,

Defendants.

CV 16-41-GF-BMM

**MEMORANDUM
AND ORDER**

## INTRODUCTION

Plaintiff Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of

America is political advocacy and trade organization representing independent,

domestic cattle producers across the United States, including Montana. Plaintiff

filed this action for declaratory and injunctive relief on May 2, 2016. Plaintiff

seeks a determination that the current administration of the federal Beef Checkoff

Program in Montana violates the First Amendment to the United States

Constitution. The Beef Checkoff Program allows the Montana Beef Council to

use a portion of a federal beef checkoff to fund promotional campaigns by the

Montana Beef Council.

Defendant United States Department of Agriculture (USDA) administers the federal Beef Checkoff Program. Defendant Sonny Perdue (Perdue) serves as the Secretary of Agriculture. Perdue oversees the federal Beef Checkoff Program.

Presently before the Court are the following motions: Defendants' Motion to Dismiss for Lack of Standing; Defendants' Motion to Dismiss for Failure to State a Claim; Defendants' Motion to Stay; Plaintiff's Motion for Summary Judgment; Plaintiff's Motion for Preliminary Injunction; and Plaintiff's Motion for a Temporary Restraining Order.

United States Magistrate Judge John Johnston issued Findings and Recommendations in this matter on December 12, 2016. (Doc. 44). Judge Johnston recommended that Defendants' Motions to Dismiss be denied, that Defendants' Motion to Stay be denied, that Plaintiff's Motion for Summary Judgment be denied, that Plaintiff's Motion for Preliminary Injunction be granted, and that Plaintiff's Motion for a Temporary Restraining Order be denied as moot. (Doc. 44 at 12).

Defendants filed objections to Judge Johnston's Findings and Recommendations on December 23, 2016. (Doc. 45). Defendants argue that Judge Johnston erred when he denied their motions to dismiss, and when he

granted Plaintiff's motion for a preliminary injunction. Plaintiff filed a response to the Defendants' objections on January 5, 2017. (Doc. 46).

## STANDARD OF REVIEW

The Court reviews de novo findings and recommendations to which the parties make objections. 28 U.S.C. § 636(b)(1). No review is required of proposed findings and recommendations to which no objection has been made. *Thomas v. Arn*, 474 U.S. 140, 149-152 (1986).

## BACKGROUND

The Beef Promotion and Research Act of 1985 (Beef Act), 7 U.S.C. § 2901 *et seq.*, imposes a $1 assessment on cattle producers on each head of cattle sold in the United States, and on each head of cattle imported into the United States. 7 U.S.C. §§ 2901(b), 2904(8)(C); 7 C.F.R. § 1260.172(a)(1). The assessment, also known as a checkoff, funds beef related promotional campaigns designed to "strengthen the beef industry's position in the marketplace and to maintain and expand domestic and foreign markets . . . for beef and beef products. 7 U.S.C. § 2901(b).

The "Cattlemen's Beef Promotion and Research Board" (Beef Board) administers the federal checkoff program. *See* 7 U.S.C. § 2904(1)-(2). The Secretary of the Agriculture appoints the Beef Board. *Id.* The "Beef Promotion

Operating Committee" (Beef Committee) develops national promotional campaigns for the Beef Board. 7 U.S.C. § 2904(4)(B). The Beef Board's promotional campaigns must comply with the Beef Act.

The Beef Act prohibits the Beef Board from developing promotional campaigns that distinguish between domestic and foreign beef products. *See* 7 U.S.C. §§ 2901, 2904(4)(B)(ii); 7 C.F.R. § 1260.169(d). The Secretary of the Agriculture must approve the Beef Board's promotional campaigns. 7 C.F.R. § 1260.169; *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 561 (2005).

The Beef Act allows "qualified state beef councils" to collect the checkoff assessments on behalf of the Beef Board. 7 C.F.R. § 1260.181(b)(2)-(4). Qualified state beef councils are private entities organized and operated within a state. 7 C.F.R. § 1260.181(a). The Montana Beef Council operates as Montana's qualified state beef council. The Montana Beef Council is a private corporation organized under the laws of Montana. (Doc. 23 at ¶ 47).

The Montana Beef Council collects beef checkoff assessments in Montana. When the Montana Beef Council collects the $1 per-head checkoff from a cattle producer it sends 50 cents from each dollar to the Beef Board. The Montana Beef Council retains the remaining 50 cents to fund its own promotional activities. (*See* Doc. 1-2 at 6; 7 U.S.C. § 2904(8)(C); 7 C.F.R. § 1260.172(a)(3).

The USDA possesses some authority over the Montana Beef Council. The USDA requires that the Montana Beef Council engage in promotional activities that promote beef and beef products. The USDA also requires that the Montana Beef Council certify that it will not use any of the money that it receives under the Beef Checkoff Program to promote "unfair or deceptive" practices, or to "influenc[e] governmental policy." *See* 7 C.F.R. § 1260.181(b)(7) (cross-referencing 7 C.F.R. § 1260.169(e)); *see also*, Beef Promotion and Research Order, 51 Fed. Reg. 26132, 26137 (July 18, 1986).

The USDA does not control how the Montana Beef Council spends the money that it obtains from the federal Beef Checkoff Program. (*See* Doc. 1-2 at 7). The Montana Beef Council determines for itself how the checkoff money that it receives should be invested. (*See* Doc. 1-2 at 13). The Montana Beef Council uses the checkoff monies that it receives to fund advertising campaigns that promote the consumption of beef. The USDA requires only that the Montana Beef Council submit annual reports of its expenditures. *See* 7 C.F.R. § 1260.181(b)(6).

The Montana Beef Council's board possesses broad discretion to determine the content of its promotional activities. The advertisements of the Montana Beef Council do not distinguish between domestic beef and foreign beef. The USDA

does not supervise the Montana Beef Council's promotional campaigns. (Doc. 40-1 at ¶¶ 14-15).

The Beef Board possesses limited authority with respect to the Montana Beef Council's promotional campaigns. *Id.* The Beef Board reviews the Montana Beef Council's "annual marketing plan" that "outlines" the Montana Beef Council's "planned activities" for the coming year. The Beef Board also conducts post-hoc audits of the Montana Beef Council's activities. (Doc. 40-1 at ¶ 19).

Until recently, no mechanism existed for a cattle producer to direct the Montana Beef Council to send the entire checkoff assessment to the Beef Board. Cattle producers who disagree with the Montana Beef Council's promotional activities now may direct that the full amount of their checkoff assessment be forwarded to the Beef Board by submitting a redirection request to the Montana Beef Council. *See* Beef Promotion and Research; Amendments to Allow Redirection of State Assessments to the National Program, 81 Fed. Reg. 45,984, 45986 (proposed July 15, 2016).

The Montana Beef Council has 60 days to review the redirection request to determine whether the cattle producer has submitted the necessary paperwork to opt-out. *Id.* The Montana Beef Council holds the cattle producer's checkoff assessment during this review period. The Montana Beef Council must forward

-6-

the full amount of the cattle producer's checkoff assessment to the Beef Board if the cattle producer provides the necessary paperwork. *Id.*

Plaintiff represents domestic cattle producers in Montana. Plaintiff disapproves of the Montana Beef Council's advertising campaigns. Plaintiff disapproves of the advertisements' failure to distinguish between domestic beef and foreign beef. Plaintiff would like the Montana Beef Council to promote only domestic beef.

Plaintiff seeks declaratory and injunctive relief. Plaintiff seeks an order declaring that the current administration of the federal Beef Checkoff Program in Montana violates the First Amendment to the United States Constitution. (Doc. 1 at 34-35). Plaintiff argues that federal Beef Checkoff Program violates the First Amendment because it forces its members to associate with the Montana Beef Council, and to subsidize the Montana Beef Council's private speech (advertising), with which it disagrees. *Id.*

Plaintiff seeks an order enjoining "the Secretary of Agriculture . . . from continuing to allow the Montana Beef Council to [collect checkoff] assessments . . . under the federal Beef Checkoff" Program. (Doc. 1 at 36). Plaintiff's members wish to pay their checkoff assessments directly to the Beef Board.

## DISCUSSION

### A.  **Defendants' Motion to Dismiss for Lack of Standing**

Defendants argue that this case should be dismissed under Fed. R. Civ. P. 12(b)(1), because Plaintiff lacks standing.

Article III of the Constitution limits the judicial power of federal courts to the resolution of cases and controversies. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). A case or controversy may exist under Article III only if the Plaintiff possesses standing. *Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002). Article III standing requires three elements: (1) injury-in-fact; (2) causation; and (3) redressability. *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 102-03 (1998). Defendants limit their challenge to the causation and redressability components.

#### a.  **Causation**

The causation element of standing requires that a causal connection exist between the defendants's conduct and the injury alleged by the Plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Defendants argue that the Plaintiff cannot satisfy the causation requirement because Plaintiff cannot show

-8-

that Defendants caused the harm alleged by Plaintiff — the forced payment of a checkoff assessment to a privately owned beef council. Defendants argue that they have taken no action to compel any member of Plaintiff's group to contribute any portion of the checkoff assessment to the Montana Beef Council.

Defendants point out that Plaintiff's members may avoid making any contribution to the Montana Beef Council merely by submitting a redirection request to the Montana Beef Council to forward the full amount of the checkoff payment to the Beef Board. Defendants argue that any contribution by Plaintiff's members to the Montana Beef Council occurs only due to the members' failure to avail themselves of the option to redirect the entire assessment to the Beef Board. Defendants contend that such self-inflicted injury cannot satisfy the Article III causation requirement.

The First Amendment prohibits the Government from compelling its citizens to subsidize private speech to which they object. *United States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001); *see also, Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005). The constitutional rights at stake involve the freedom of speech and the freedom of association. *See Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S.Ct. 2277, 2288 (2012). The Government violates the First Amendment when it compels a citizen to subsidize the private speech of a

private entity without first obtaining the citizen's "affirmative consent." *See Knox*, 132 S.Ct. at 2296.

The First Amendment violation may occur even for a temporary compelled-subsidy. *Id.* at 2290; *In re Wash. State Apple Advert. Comm'n*, 257 F. Supp. 2d 1274, 1288 (E.D. Wash. 2003). The Government first must secure the citizen's "affirmative consent" through an opt-in provision when it wishes to have a citizen fund private speech through a compelled subsidy. *Knox*, 132 S.Ct. at 2295-96. An op-out provision fails to alleviate the First Amendment violation that arises, however, when the Government compels a citizen to subsidize the private speech of a private entity. *Id.* at 2293.

Cattle producers in Montana must pay the checkoff assessments to the Montana Beef Council. One-half of the monies received by the Montana Beef Council fund the Montana Beef Council's advertising program unless the cattle producer opts-out by submitting a proper redirection request. The parties disagree on whether the Montana Beef Council's advertising program constitutes private speech or public speech.

Plaintiff would possess a viable First Amendment claim if the Montana Beef Council's advertising involves private speech. The Montana Beef Council would have received the compelled assessment without first having obtained the cattle

producer's affirmative consent through an opt-in provision. Plaintiff satisfies the causation component of standing in that context.

### b. Redressability

The redressability element of standing requires a showing that the injury alleged by the Plaintiff likely will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Defendants argue that a favorable decision from this Court would be an order authorizing Plaintiff's members to pay the total amount of their checkoff assessments directly to the Beef Board. Defendants claim that such a ruling would fail to redress Plaintiff's alleged injury. The Beef Act prohibits the Beef Board from running the promotional advertisements that Plaintiff desires — "advertisements that distinguish between domestic and foreign beef products." (Doc. 45 at 17).

An injunction authorizing Plaintiff's members to pay the total amount of their checkoff assessments directly to the Beef Board would redress the injury that Plaintiff alleges. Plaintiff's members would not be compelled to turn money over to, and thereby associate with, a private entity that engages in speech that Plaintiff's members oppose. What distinguishes unconstitutional subsidies for private speech from constitutional subsidies of government speech is not the content of the speech, but rather that the latter is "democratic[ally] accountab[le]."

*Johanns*, 544 U.S. at 563. Plaintiff's members may not always agree with the advertising of the Beef Board. They can attempt to exert influence, however, over the Beef Board's advertising through the democratic process. Plaintiff's members do not possess the same ability to influence the advertising of the Montana Beef Council. Plaintiff satisfies the requirements for standing.

## B. Defendants' Motion to Dismiss for Failure to State a Claim

Defendants have moved to dismiss this case under Fed. R. Civ. P. 12(b)(6), on grounds that Plaintiff's Complaint fails to state a claim upon which relief may be granted. Defendants argue that Plaintiff's Complaint fails to allege a First Amendment violation for the following reasons. Defendants contend first that the First Amendment does not apply to the Montana Beef Council's checkoff-funded advertisements that involve Government speech. Defendants next argue that no First Amendment violation has occurred even if the Montana Beef Council's advertisements constitute private speech.

Defendants suggest that the Beef Checkoff Program's redirection provision, by which cattle producers who object to contributing to the Montana Beef Council may redirect their full assessment to the Beef Board, removes any compelled-subsidy concern. And Defendants further contend that the operation of the Beef

-12-

Checkoff Program in Montana satisfies intermediate scrutiny, the standard applicable to commercial speech. (Doc. 45 at 18).

### a. Do the Montana Beef Council's Advertisements Constitute Government Speech?

Defendants argue that Plaintiff has failed to state a First Amendment violation because the Montana Beef Council's checkoff-funded advertisements constitute government speech. The First Amendment does not prohibit the Government from compelling its citizens to subsidize government speech. *Johanns*, 544 U.S. at 562. Unlike private speech, government speech remains "subject to democratic accountability." *Id.* at 563. People and groups who disfavor government speech may use the political process to compel the government to change its speech. *Id.*

Whether speech of a private entity constitutes government speech turns on whether government officials exercise "effective control" over the speech. *Paramount Land Co. LP v. California Pistachio Commission*, 491 F.3d 1003, 1011 (9th Cir. 2007) (citing *Johanns*, 544 U.S. at 560). This rule consistently has been understood to mean that the government must at least hold statutory control over the entity that makes the challenged speech, and, also, in most cases, the speech itself. For example, the Supreme Court in *Johanns* determined that

advertising by the Beef Board qualified as government speech because the USDA retained effective control over the Beef Board and its advertising. The Supreme Court reasoned that "a politically accountable official" supervised the Beef Board's promotional program, appointed and dismissed key Beef Board personnel, and retained absolute veto power over the content of the Beef Board's advertisements, "right down to the wording." *Johanns*, 544 U.S. at 563.

Similarly, the Ninth Circuit in *Paramount Land Co. LP* determined that promotions of the California Pistachio Commission qualified as government speech because the California Secretary of Agriculture exercised effective control over the Commission. *Paramount Land Co. LP*, 491 F.3d at 1010-11. The Court noted that the Secretary of Agriculture possessed the authority to appoint one member of the Commission, and "suspend or discharge the Commission's president." *Id.* The statutory scheme also required the Secretary of Agriculture to "concur in any [Commission] nomination and election procedure[]," and annually review and approve all of the activities of the Commission. *Id.*

Finally, the Ninth Circuit in *Delano Farms Co. v. California Table Grape Commission*, 586 F.3d 1219 (9th Cir. 2009), determined that promotions of the California Table Grape Commission qualified as government speech because the California Secretary of Agriculture exercised effective control over the

Commission. *Id.* at 1228-29. The Secretary of Agriculture "possesse[d] the power of nomination over all of the table grape commissioners," and "the power to remove a table grape commissioner." *Id.*

The statutes and regulations relating to the Beef Checkoff Program provide the USDA with less control over the Montana Beef Council. *See* 7 C.F.R. § 1260.181(b). The USDA lacks the authority to appoint or remove any of the Montana Beef Council's members. The USDA does not control how the Montana Beef Council spends the checkoff assessments. The applicable statutes and regulations merely prohibit the Montana Beef Council from using checkoff money to promote "unfair or deceptive" practices, or to "influenc[e] governmental policy." *See* 7 C.F.R. § 1260.181(b)(7). In fact, these statutes and regulations require only that the Montana Beef Council's advertising advance the image and desirability of beef and beef products. 7 U.S.C. § 2901(b); 7 C.F.R. § 1260.169(a).

Defendants' claim that it effectively can control the Montana Beef Council through the Beef Board proves incorrect. The Beef Board is not a "democratic[ally] accountab[le]" body that is mandated to respond to and implement citizens's concerns. *See Johanns*, 544 U.S. at 563. The statutes and regulations structure the Beef Board to operate as an independent body. The Beef

Board only can operate constitutionally because the Executive Branch appoints its members and oversees it operations. *See* 7 U.S.C. § 2904.

Moreover, the Beef Board does not exercise the level of control over the Montana Beef Council that proved compelling in *Johanns, Paramount Land*, and *Delano Farms.* The Beef Board cannot appoint or remove any members of the Montana Beef Council. *Cf. Delano Farms Co.*, 586 F.3d at 1228-29. The Beef Board lacks the ability to direct the Montana Beef Council's advertising program. *Cf. Paramount Land Co. LP*, 491 F.3d at 1010-11. The Beef Board's only participation in developing the Montana Beef Council's promotional campaigns is that it reviews the Council's an annual outline of its planned activities, and conducts post-hoc audits of the Council's activities. (Doc. 40-1 at ¶ 19).

The Court cannot state, as a matter of law, that USDA's limited control over the Montana Beef Council, constitutes "effective control" over the Montana Beef Council's advertising program. The Court cannot conclude, therefore, as a matter of law, that the Montana Beef Council's advertisements qualify as government speech. Defendants' motion to dismiss must be denied.

### b.   **Redirection Procedure**

Defendants argue that the cattle producers' ability to request that the Montana Beef Council send their entire checkoff assessment to the Beef Board,

through a redirection request, obviates any First Amendment violation. The First
Amendment prohibits the government from compelling individuals to subsidize
private speech with which they disagree. *Johanns*, 544 U.S. at 557. The Supreme
Court has rejected the argument that mere presence of an opt-out provision
alleviates First Amendment concerns. *Knox*, 132 S.Ct. at 2993. The presence of a
"redirection" provision does not prove fatal to Plaintiff's claim. Defendant's
motion to dismiss must be denied.

### c. **Intermediate Scrutiny**

Defendants argue, in the alternative, that the compelled assessments
authorized by the Beef Act and used by the Montana Beef Council to fund its
advertising prove constitutional because they satisfy the intermediate scrutiny
standard applicable to commercial speech. (Doc. 45 at 28). The Supreme Court
set forth a three-pronged test for intermediate scrutiny in *Central Hudson Gas &
Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 564 (1980). Defendants argue
that the compelled assessments authorized by the Beef Act satisfy the *Hudson* test
for intermediate scrutiny.

Defendants point to the following three factors: 1) the Beef Checkoff
Program "promotes substantial government interests" such as: "enhancing the
welfare of beef producers, stabilizing the general economy of the Nation, and

ensuring that the people of the United States receive adequate nourishment;"

2) the "Beef Act directly advances the government's interests by embedding . . .

established State organizations [qualified state beef councils] into its regulatory

scheme; and 3) "any interference with [the Plaintiff's] First Amendment rights . . .

is not more extensive than necessary to serve the government's interests." (Doc.

39 at 28-29).

The Supreme Court made clear in *Knox* that "compulsory subsidies for

private speech remain subject to exacting First Amendment scrutiny" rather than

the intermediate scrutiny applied to commercial speech. *Knox*, 132 S. Ct. at 2289.

Compelled subsidies "cannot be sustained unless two criteria are met." *Id.* First,

"there must be a comprehensive regulatory scheme involving a 'mandated

association' among those who are required to pay the subsidy." *Id.* Second, "even

in the rare case where a mandatory association can be justified, compulsory fees

can be levied only insofar as they are a 'necessary incident' of [a] 'larger

regulatory purpose which justified the required association." *Id.* (quoting *United

Foods*, 533 U.S. at 414).

The government cannot compel citizens to subsidize a private advertising

program for the sole purpose of increasing demand for a product. *United Foods*,

533 U.S. at 415. The Montana Beef Council uses the compelled assessments

-18-

solely for advertising to increase the demand for generic beef. Compelled

subsidies used solely to fund private speech remain unconstitutional under any

level of scrutiny, even under the lesser scrutiny accorded to commercial speech.

*United Foods*, 533 U.S. at 410. Defendants' motion to dismiss must be denied.

## C. Plaintiff's Motion for Preliminary Injunction

Plaintiff has moved for a preliminary injunction to enjoin the Defendants

from continuing to allow the Montana Beef Council to use the assessments that it

collects under the Beef Checkoff Program to fund its advertising campaigns,

absent prior affirmative consent from the payer. Defendants oppose the motion.

A party seeking preliminary injunctive relief must show the following:

1. It "is likely to succeed on the merits;"

2. It is "likely suffer irreparable harm in the absence of a preliminary relief;"

3. The "balance of equities tips in favor" of a preliminary injunction; and

4. An "injunction is in the public interest."

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Each of the preliminary injunction factors weigh in Plaintiff's favor.

Plaintiff likely will succeed on its First Amendment claim due to the

compelled private speech. *United Foods*, 533 U.S. at 415. If the Court were to

-19-

determine that the Montana Beef Council's advertising qualifies as private speech, a First Amendment violation occurs each time that the Montana Beef Council accepts a checkoff assessment without the payer's affirmative consent. *Id.* at 413. The Supreme Court in *United Foods* analyzed a First Amendment challenge to a government program that required mushroom growers to contribute to an advertising program. *Id.* at 410-411. The Supreme Court recognized that producers might be required to subsidize speech with which they disagree. *Id.* The Supreme Court noted that it had not upheld compelled subsidies for speech in the context of a program "where the principal object is speech itself." *Id.* at 415. The program at issue here likewise requires contributions for speech itself — compelling speech with which Plaintiff's members disagree.

The Government's statutorily authorized control over the Montana Beef Council appears inadequate to transform the Montana Beef Council's advertising into government speech. *Cf. Johanns*, 544 U.S. at 563. The Supreme Court in *Johanns* acknowledged that the Secretary of Agriculture "does not write ad copy himself." *Johanns*, 544 U.S. at 560. The Supreme Court noted instead the degree to which the speech at issue remained "subject to democratic accountability." *Id.* at 563. This point, the degree to which participants could alter the message through the democratic process, led the Supreme Court to classify the beef check-

off program at issue in *Johanns* as government speech. This determination led the Supreme Court to reject a compelled speech challenge. *Id.* at 566-567. The Montana Beef Council avoids the same type of "democratic accountability" that would transform the messages at issue to government speech.

Second, Plaintiff likely will suffer irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). The Court in *In re Wash. State Apple Advert. Comm'n*, 257 F. Supp. 2d at 1288, recognized that the use of compelled assessments, "even temporarily," violates the First Amendment. Likewise, the Supreme Court in *Ellis v. Brotherhood of Ry. Clerks*, 466 U.S. 435, 444 (1984), addressed a challenge to compelled speech in the form of union dues. The union collected the dues and months later refunded a portion to those members who objected to the union's non-collective bargaining activities. This temporary collection of dues, followed by a refund, still violated the First Amendment. *Ellis*, 466 U.S. at 444. The opt-out provision at issue here, with its eventual redirection of the checkoff fee, likewise fails to remedy the First Amendment violation.

Third, the balance of equities and the public interest tip in favor of a preliminary injunction. Freedom of speech represents a fundamental right. There

exists a "significant public interest in upholding free speech principles." *Klein*,

584 F.3d at 1208. A preliminary injunction would protect not only Plaintiff's

members, but also all other Montana cattle producers who may disagree with the

speech at issue. An injunction that protects persons other than the plaintiff tips the

equities in the plaintiff's favor. *See Barrett v. Premo*, 101 F. Supp. 3d 980, 998

(D. Or. 2015). Plaintiff has met its burden to show that a preliminary injunction

would be appropriate.

## CONCLUSION

I find no error in Judge Johnston's Findings and Recommendations and

adopt them in full.

Accordingly, IT IS HEREBY ORDERED:

1.    Defendants' Motion to Dismiss for Lack of Standing (Doc. 19-1) is

DENIED.

2.    Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 19-

2) is DENIED.

3.    Defendants' Motion to Stay (Doc. 19-3) is DENIED.

4.    Plaintiff's Motion for Summary Judgment (Doc. 21-1) is DENIED.

5.    Plaintiff's Motion for Preliminary Injunction (Doc. 21-2) is

GRANTED. Defendants are enjoined from continuing to allow the Montana Beef Council to use the assessments that it collects under the Beef Checkoff Program to fund its advertising campaigns, unless the payer provides prior affirmative consent authorizing the Montana Beef Council to retain a portion of the payer's assessment.

6.      Plaintiff's Motion for Temporary Restraining Order (Doc. 27) is DENIED as moot.

DATED this 21st day of June, 2017.

Brian Morris
United States District Court Judge