William A. Rossbach
ROSSBACH LAW, P.C.
401 North Washington St.
Missoula, MT 59807
Phone:  (406) 543-5156
bill@rossbachlaw.com

David S. Muraskin
PUBLIC JUSTICE, P.C.
1620 L St. NW, Suite 630
Washington, DC 20036
Phone:  (202) 861-5245
dmuraskin@publicjustice.net

J. Dudley Butler
BUTLER FARM & RANCH LAW
GROUP, PLLC
499-A Breakwater Dr.
Benton, MS 39039
Phone:  (662) 673-0091
jdb@farmandranchlaw.com
        *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RANCHERS-CATTLEMEN ACTION LEGAL FUND, UNITED STOCKGROWERS OF AMERICA, *Plaintiff*, v. SONNY PERDUE, IN HIS OFFICIAL CAPACITY AS SECRETARY OF AGRICULTURE, AND THE UNITED STATES DEPARTMENT OF AGRICULTURE, *Defendants*, MONTANA BEEF COUNCIL et al. *Intervenors*. | Case No. CV-16-41-GF-BMM-JTJ **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES & COSTS** |

# TABLE OF CONTENTS

I.      FACTUAL AND PROCEDURAL BACKGROUND ...................................2

II.     ARGUMENT...........................................................................................7

    A.   R-CALF Is Eligible for an Interim Award of Fees & Costs under
        the Equal Access to Justice Act...................................................7

    B.   R-CALF is a Prevailing Party ...................................................9

    C.   USDA's Position Was Not Substantially Justified ...............................12

    D.   R-CALF's Attorney's Fees Are Reasonable .......................................13

    E.   R-CALF Is Entitled to Fees for Time Spent Seeking Reasonable
        Fees and Costs ...........................................................17

    F.   R-CALF's Costs Are Reasonable .......................................................18

III.    CONCLUSION...........................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Andrew v. Bowen*, 837 F.2d 875 (9th Cir. 1988) .................................................... 12

*Balla v. State of Idaho*, 677 F.3d 910 (9th Cir. 2012) ........................................... 15

*Buckhannon Bd. v. W. Va. Dep't of Health and Human Res.*,
    532 U.S. 598 (2001) ...................................................................................... 9, 10

*Cervantez v. Sullivan*, 739 F.Supp. 517 (E.D. Cal. 1990) ....................................... 12

*Delano Farms Co. v. California Table Grape Comm'n*,
    586 F.3d 1219 (9th Cir. 2009) ..................................................................... 12, 13

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993)....................................... 13, 16

*Floyd v. Oliverson*, 2007 WL 9697529 (D. Mont. Apr. 2, 2007)........................... 15

*Hensley v. Eckerhardt*, 461 U.S. 424 (1983) ...................................................... 9, 13

*Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013)...................... 10

*Hoffman v. Geico Insurance Company*,
    2008 WL 11417041 (D. Mont. June 25, 2008) ............................................... 15

*Int'l Woodworkers, Local 3-98 v. Donovan*, 792 F.2d 762 (9th Cir. 1985) ........... 18

*Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005) ....................................... 13

*League for Coastal Protection v. Kempthorne*,
    2006 WL 3797911 (N.D. Cal. Dec. 22, 2006) .................................................. 8

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991) ....................................................... 12

*McColl v. Allied Professionals Insurance Company*,
    2018 WL 5253501 (D. Mont. Oct. 22, 2018)................................................... 15

*ONRC v. Marsh*, 52 F.3d 1485 (9th Cir. 1995) ...................................................... 12

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002)......................................... 10

*Pierce v. Underwood*, 487 U.S. 552 (1988)........................................................... 12

*R-CALF v. Perdue*, 2017 WL 2671072 (D. Mont. June 21, 2017)........................... 3

*R-CALF v. Perdue*, 718 Fed. Appx. 541 (9th Cir. Apr. 9, 2018) ............................ 4

*Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995) .......................................... 9

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005).......................................... 14

*Thomas v. City of Tacoma*, 410 F.3d 644 (9th Cir. 2005) ......................................... 9

*Thompson v. Gomez*, 45 F.3d 1365 (9th Cir. 1995)................................................. 17

*United States v. Marolf*, 277 F.3d 1156 (9th Cir. 2002)......................................... 12

*United States v. Real Prop. Known as 22249 Dolorosa St.*,
190 F.3d 977 (9th Cir. 1999) ................................................................ 9

*Wooten v. BNSF Railway Company*,
387 F. Supp. 3d 1078 (D. Mont. 2019) ................................................. 14, 18, 19

**Statutes**

7 U.S.C. § 2904(4)(C) ............................................................................... 5

28 U.S.C. § 2412 .............................................................................. *passim*

**Regulations**

7 C.F.R. § 1260.181 .................................................................................. 5

**Other Materials**

H.R.Rep. No. 1418, 96th Cong., 2d Sess., 18, reprinted in
1980 U.S. Code Cong. & Adm. News 4953....................................................... 8

*R-CALF v. Perdue*, Case No. 20-35453, Dkt. No. 11 (9th Cir. Aug. 31, 2020)....... 6

Plaintiff Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of America ("R-CALF") is a nonprofit, cattle industry trade organization focused on ensuring the continued viability of independent, domestic cattle producers. In this litigation, R-CALF brought about changes to the operation of private state beef councils, who use producers' assessments obtained through the Beef Checkoff program to fund speech, so that the compelled subsidy of speech complies with the First Amendment. This Court's June 21, 2017 Preliminary Injunction Order, Dkt. No. 47, which remained in effect through the Court's March 27, 2020 Summary Judgment Order, Dkt. No. 147, provided R-CALF with relief against the Government-Defendants, the United States Department of Agriculture and Secretary Sonny Perdue (collectively "USDA"). While the Court subsequently granted USDA's Motion for Summary Judgment, it did so only because the Government had entered into Memoranda of Understanding ("MOUs") with the private state beef councils that the Court determined satisfied the First Amendment and remedied R-CALF's injury, voiding the need for an injunction. Although R-CALF has appealed that decision to obtain further reforms, USDA has not appealed the Court's determination that the MOUs are necessary to bring the private state beef councils into line with the Constitution.

This qualifies R-CALF as a prevailing party entitled to its reasonable attorney's fees and litigation costs under the Equal Access to Justice Act

("EAJA"). 28 U.S.C. §§ 2412(a)(1), (d)(1)(A). R-CALF may move for interim fees at any time on the aspects of its claims for which it prevailed, particularly as the portion of the litigation for which R-CALF prevailed is no longer subject to appeal. R-CALF respectfully requests a court order awarding it $145,428.08 in attorney's fees and $5,344.17 in out-of-pocket expenses. R-CALF will supplement this amount to include additional time spent briefing this Motion upon filing their reply brief.

In this Memorandum, R-CALF recounts the relevant history of this litigation to show that it prevailed in this lawsuit and that USDA's position, both before and during the case, was not "substantially justified" and therefore USDA is not exempt from EAJA. R-CALF also demonstrates that its fees are reasonable under the Lodestar formula. Both the success achieved and the fact that R-CALF has brought about compliance with the First Amendment strongly support the award.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2016, R-CALF brought this as-applied First Amendment suit alleging that insofar proceeds from the Beef Checkoff program's assessments on producers are taken by private state-based entities (specifically, at that time, the Montana Beef Council) and used to pay for private speech that amounts to an unconstitutional government-compelled subsidy of speech. Dkt. No. 1, R-CALF's Complaint. The federal Beef Checkoff program is a tax on producers that can only

be used to fund speech and is therefore "unconstitutional under any level of scrutiny" to the extent it funds private speech. *R-CALF v. Perdue*, 2017 WL 2671072, at *7 (D. Mont. June 21, 2017). However, when the compelled subsidy funds "government speech" it can survive because "[u]nlike private speech, government speech remains 'subject to democratic accountability'" and is exempt from First Amendment review. *Id.* at *5 (quoting *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 563 (2005)). Determining if a compelled subsidy funds "government speech turns on whether government officials exercise 'effective control' over the speech." *Id.*

This Court, adopting the Findings & Recommendations of the Magistrate, Dkt. No. 44, entered a preliminary injunction in this case because the Government's control over the Montana Beef Council was likely insufficient to render the councils' speech funded by the checkoff "government speech." Dkt. No. 47, Order Granting Preliminary Injunction. The Court concluded the Beef Act and Order's broad guidelines for how the checkoff should be spent—that the expenditures must "advance the image and desirability of beef" without being used for "unfair or deceptive" practices or "to influence governmental policy"—are insufficient to ensure the Checkoff is used to fund government speech and there were no other controls over the council's speech at the time. Dkt. No. 47, at 15-16. Therefore, the Court found the council's use of the compelled assessments likely

unconstitutional. *Id.* at 15-16, 19. On April 9, 2018, the Ninth Circuit affirmed this Court's order granting the preliminary injunction. *R-CALF v. Perdue*, 718 Fed. Appx. 541 (9th Cir. Apr. 9, 2018).

Prior to summary judgment two things occurred: (1) the lawsuit was expanded to include 14 additional states where Beef Checkoff money was retained and used by private state beef councils to fund speech (Montana, Hawaii, Indiana, Kansas, Maryland, Nebraska, Nevada, New York, North Carolina, Pennsylvania, South Carolina, South Dakota, Texas, Vermont, and Wisconsin), Dkt. No. 56-1, R-CALF's Supplemental Pleading; Dkt. No. 58, R-CALF's Reply in Supp. of Supplemental Pleading; and (2) USDA entered into MOUs with the private state beef councils in all 15 states encompassed in the expanded litigation, in addition to 5 others (Colorado, Florida, Oklahoma, Tennessee, and Virginia), Dkt. No. 100, USDA's Statement of Undisputed Facts, at ¶ 57.

The case continued through discovery and summary judgment where this Court ultimately adopted the Findings & Recommendations of the Magistrate, Dkt No. 135, concluding that absent the MOUs the use of Beef Checkoff money by the private state beef councils was unconstitutional. Dkt. No. 147, at 2, 23-25. However, the Court found the MOUs "gave USDA broad new authority over any potential speech that the beef councils might produce," thereby "provid[ing]

sufficient control of qualified state beef councils' speech for that speech to qualify as government speech and thus not run afoul of the First Amendment." *Id*. at 2.

Specifically, prior to USDA entering into the MOUs with the private state beef councils at issue, none of the specific statements of the private state beef councils were subject to pre-approval. Thus, the "controls" in the Beef Act and Order were not sufficient to render the speech of the private state beef councils at issue "government speech."

This Court held, however, that under the MOUs USDA now has "significant discretion to approve or reject any and all QSBC[1] promotional activities. Under the MOUs, QSBCs agree to submit to USDA 'for pre-approval any and all promotion, advertising, research, and consumer information plans and projects.' QSBCs also must provide USDA with advance notice of any QSBC board meetings and allow a USDA official to attend. USDA may 'direct the Beef Board to de-certify' the QSBC if the QSBC fails to comply with the MOU." Dkt. No. 147, at 5 (internal citations omitted).

As this Court put it, unlike what was occurring prior to this litigation, "under the MOUs …, USDA now retains complete final approval over all QSBC ads. This final approval gives USDA the option to exercise its authority to decertify a QSBC

---

[1] The Beef Act and Order refer to the private state beef councils as "qualified state beef councils," 7 U.S.C. § 2904(4)(C); 7 C.F.R. § 1260.181, abbreviated as "QSBC" in the Court's order.

*before* the QSBC ever gets the chance to disseminate advertisements." *Id*. at 13-14 (emphasis in original) (quotations omitted); *see also id.* at 16 ("Under the MOUs, QSBCs agree to submit to USDA 'for pre-approval any and all promotion, advertising, research, and consumer information plans and projects, which [USDA] shall review and approve or reject.' The QSBCs also agree 'to submit for pre-approval … any and all potential contracts or agreements to be entered into by [a QSBC] for the implementation and conduct of plans or projects funded by checkoff funds.'") (alterations in original) (internal citations omitted). Thus, under the MOUs, "QSBCs face the choice of getting USDA approval or not speaking at all." *Id*. at 16. In other words, the Court ruled that because of the MOUs, the speech of the private state beef councils encompassed in this litigation is now effectively controlled by the federal government, *i.e.*, it is "government speech" exempt from First Amendment review.

Following the Court's Order, R-CALF filed its notice of appeal, Dkt. No. 149. Neither USDA nor Intervenors appealed. The only issues before the Ninth Circuit are (1) whether the private third-party speech that the state beef councils fund and that USDA does not review violates the First Amendment, and (2) whether R-CALF is an entitled to an order enforcing the terms of the MOUs or whether the MOUs themselves are a sufficient enough change to the program. *R-CALF v. Perdue*, Case No. 20-35453, Dkt. No. 11, at 1 (9th Cir. Aug. 31, 2020).

R-CALF sought to resolve R-CALF's fees and costs with USDA prior to filing this motion and the parties were unable to narrow any issues. Declaration of David S. Muraskin ("Muraskin Declaration"), at ¶ 3 (attached hereto). In accordance with Civil Local Rule 7.1(c)(1), R-CALF contacted USDA prior to filing this motion and USDA objected. R-CALF's present motion seeks R-CALF's fees and costs from case development through litigating the appeal of the preliminary injunction. In addition, R-CALF seeks its fees and costs for time negotiating and litigating this issue and will supplement this amount to include additional time spent briefing this Motion upon filing their reply brief.

R-CALF has limited the attorney's fees and costs it is seeking to this timeframe because it is what R-CALF is most clearly entitled to under the authorities supporting "interim fees" discussed below. However, R-CALF reserves its right to seek additional attorney's fees and costs for the remainder of the litigation if R-CALF is successful in its appeal.

## II.   ARGUMENT

### A.   <u>R-CALF Is Eligible for an Interim Award of Fees & Costs under the Equal Access to Justice Act</u>

R-CALF seeks to recover attorney's fees and costs under 28 U.S.C. §§ 2412(a)(1), (d)(1)(A). EAJA provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action … brought by

or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Organizations are eligible to seek fees and costs under EAJA if their net worth "did not exceed $7,000,000 at the time the civil action was filed," and they did not have "more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). The Declaration of Bill Bullard filed concurrently with this brief establishes R-CALF's eligibility under these requirements. Declaration of Bill Bullard, at ¶ 4 (attached hereto).

Moreover, awards are available to organizations that meet these requirements even while litigation is ongoing. "[I]nterim fees are available under the EAJA where a party has prevailed on some substantial part of its claim, notwithstanding the need for further proceedings." *League for Coastal Protection v. Kempthorne*, 2006 WL 3797911, at *3 (N.D. Cal. Dec. 22, 2006) (citing *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci*, 867 F.2d 1224, 1225 (9th Cir.1989); *Nat'l Wildlife Fed'n v. FERC*, 870 F.2d 542, 545-46 (9th Cir.1989)).

The House Committee report in support of 28 U.S.C. § 2412(d)(1)(B) explicitly states EAJA "should not be construed as requiring a final judgment on the merits before a court may award fees." H.R.Rep. No. 1418, 96th Cong., 2d Sess., 18, reprinted in 1980 U.S. Code Cong. & Adm. News 4953, 4997. Instead,

"[a] fee award may ... be approved where the party has prevailed on an interim order that was central to the case." *Id.* at 4990. Further, judicial economy favors resolving this issue while it is fresh in the Court's mind and will guide any further discussions and/or motion practice regarding fees in the future should R-CALF prevail in its appeal. Thus, an interim award of fees and costs under EAJA is appropriate.

### B.     R-CALF is a Prevailing Party

EAJA's prevailing party standard is satisfied when a plaintiff achieves some success on the merits based on a court ruling. Success can be "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhardt*, 461 U.S. 424, 433 (1983); *United States v. Real Prop. Known as 22249 Dolorosa St.*, 190 F.3d 977, 981 (9th Cir. 1999). The Ninth Circuit has explained further:

> A litigant need not prevail on every issue, or even on the central issue in the case, to be considered the prevailing party. … It is enough that he succeed 'on any significant claim affording some of the relief sought, either pendente lite or at the conclusion of the litigation.'

*Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989)); *see Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) ("The fact that Plaintiff failed to recover on *all* theories of liability is not a bar to recovery of attorney's fees.") (emphasis in original); *see also Buckhannon Bd. v. W. Va. Dep't of Health and*

*Human Res.*, 532 U.S. 598, 603, 605 (2001) (a "'prevailing party' is one who has been awarded some relief by the court," which requires a "judicially sanctioned change in the legal relationship of the parties"); *see also Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (applying *Buckhannon*, which arose under 42 U.S.C. § 1988, to EAJA claims for fees).

A preliminary injunction issued after "a finding that the plaintiff has shown a likelihood of success on the merits" is sufficient to satisfy EAJA and "warrant[s] an award of fees, even in the absence of a final judgment on the merits," as long as it results in "sufficiently enduring change." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716-17 (9th Cir. 2013). Of particular relevance here, "when the plaintiff wins a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions … [t]here is [] no concern that the relief the plaintiff won at the preliminary-injunction stage will prove to be ephemeral … [as] the injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation." *Id*. at 717. Therefore, such plaintiffs satisfy *Buckhannon* and are entitled to EAJA fees.

Here, the summary judgment decision and related Findings and Recommendations make clear it is only because Defendant USDA entered into MOUs with the state beef councils at issue that their conduct is constitutional. Dkt. Nos. 135, at 14; 147, at 10-11. This Court's preliminary injunction order changed

the legal relationship between the parties, and it did so from June 21, 2017 through March 27, 2020. The injunction prevented the checkoff collected in Montana from being used without sufficient constitutional oversight from USDA, and, according to the Court's summary judgment decision, the MOUs render that relief enduring (and in fact extend that relief to all the private state beef councils at issue in the expanded litigation).

Plaintiffs obtained substantial relief. While in its appeal R-CALF continues to argue for greater Government control over other aspects of the private state beef councils' administration of the federal Beef Checkoff program and that a court should order the terms of the MOUs remain in place permanently, R-CALF has prevailed on the gravamen of its claim: It established the "controls" USDA has under the Beef Act and Order over the qualified state beef councils' use of the checkoff for their advertisements were insufficient when the case began and succeeded in compelling the government to amend those controls. The Government and Intervenors have not appealed to argue those changes are not necessary and need not be enduring, R-CALF has merely appealed to argue that yet further steps are needed towards that end.

In sum, Plaintiffs obtained excellent results and success. Both the Court's order and subsequent developments in the case that flowed from that preliminary injunction ruling demonstrate that R-CALF is the prevailing party under EAJA.

**C.**   **USDA's Position Was Not Substantially Justified**

USDA may avoid a fee award to a prevailing party only if its position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). USDA bears the burden of demonstrating that both its underlying conduct and its litigation position was substantially justified. *ONRC v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995); *see also Cervantez v. Sullivan*, 739 F.Supp. 517, 521 (E.D. Cal. 1990).

Substantially justified means the position "has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). "A reasonable litigation position does not establish substantial justification in the face of a clearly unjustified underlying action." *United States v. Marolf*, 277 F.3d 1156, 1163-64 (9th Cir. 2002); *Andrew v. Bowen*, 837 F.2d 875, 880 (9th Cir. 1988). Nor does a substantial justification for the underlying conduct at the time it occurred demonstrate that the subsequent litigating positions had a reasonable basis in law. *Cervantez*, 739 F. Supp. at 521.

While USDA may attempt to establish its position was substantially justified, it cannot meet its burden. Here, neither the USDA's underlying conduct nor its litigation position had a reasonable basis in law. It has long been established in this Circuit that an entity agreeing to comply with the Beef Act is insufficient to turn private speech into "government speech." *Delano Farms Co. v. California*

*Table Grape Comm'n*, 586 F.3d 1219, 1228 (9th Cir. 2009). Moreover, the Supreme Court has explained the Beef Checkoff program is lawful only if the government controls all the speech the checkoff funds, "right down to the wording," as then the speech is "government speech," which is exempt from the First Amendment scrutiny. *Johanns*, 544 U.S. at 563. Despite these precedents, prior to this case, USDA allowed the private state beef councils to use checkoff funds without any controls over the speech used beyond the controls laid out in Beef Act and its regulations. Put simply, at least seven years (and more likely closer to 14 years) before R-CALF filed suit, the Government was placed on notice that allowing the state beef councils to use the beef checkoff for their speech was unconstitutional. Nonetheless, it persisted in this misconduct and then defended it before this Court for years. Thus, neither its underlying conduct nor its litigation position was substantially justified.

**D.    R-CALF's Attorney's Fees Are Reasonable**

R-CALF's claim for attorney's fees is based on the Lodestar formula. The Lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Although the applicant bears the burden to demonstrate that the hourly rate is appropriate and the hours are reasonable, once demonstrated, the Lodestar figure is presumed to be reasonable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993).

Under EAJA, the appropriate rate for the Lodestar formula is "based upon prevailing market rates for the kind and quality of the services furnished, except that … attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living … justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

Under Ninth Circuit authority, the $125 per hour rate is increased to account for the cost of living according to the year the work was performed. Pursuant to EAJA and *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005) the applicable hourly rates adjusted for increases in the cost of living, are as follows (http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039):

2020:  $206.77
2019:  $205.25
2018:  $201.60
2017:  $196.79
2016:  $192.68
2015:  $190.28
2014:  $190.06
2013:  $187.02
2012:  $184.32
2011:  $180.59
2010:  $175.06

The most recent cases in the District of Montana plainly reveal that the prevailing market rates are higher than the EAJA rates set by the Ninth Circuit for the year the work was performed. *Wooten v. BNSF Railway Company*, 387 F. Supp. 3d 1078, 1109 (D. Mont. 2019) (finding prevailing market rates for

14

plaintiff's attorneys to be between $275-$425/hour); *McColl v. Allied Professionals Insurance Company*, 2018 WL 5253501, at *3 & n.3 (D. Mont. Oct. 22, 2018) (finding an hourly rate of $275 reasonable after the court "surveyed attorney fee cases which have come before the Montana Supreme Court in the last decade"); *see also Hoffman v. Geico Insurance Company*, 2008 WL 11417041, at *4 (D. Mont. June 25, 2008) (in 2008, "the Court, having been routinely called upon to make awards in civil cases … knowledgeable of prevailing hourly market rates for legal services … f[ound] that an hourly rate of $165 per hour is both reasonable and in line with the prevailing market rate"); *Floyd v. Oliverson*, 2007 WL 9697529, at *2 (D. Mont. Apr. 2, 2007) (in 2007, the district court "rely[ing] on its own knowledge of the market rate … f[ound] the applicable hourly rate for legal services to be $175").

Given R-CALF seeks the rates set by the Ninth Circuit for EAJA cases that are below prevailing market rates, all that remains is for R-CALF to establish that the hours are reasonable.

Time spent is compensable if the work is reasonably directed to achieving the client's goals. *Balla v. State of Idaho*, 677 F.3d 910, 920-921 (9th Cir. 2012) (fees "directly and reasonably incurred" where attorneys "work was what one would expect of a lawyer working for a client that could afford its efforts but that was not indifferent to the cost"). Once a plaintiff has presented a fully-documented

15

claim, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98.

R-CALF's counsel has fully documented the time spent advancing this case with detailed time records. Muraskin Declaration, at ¶¶ 4-10 & Exhibit A. R-CALF's log details the time counsel spent on several tasks, each of which was directly tied to achieving the client's goals. Exhibit A.

Moreover, R-CALF has taken diligent steps to ensure its request for fees is reasonable. For example, R-CALF excluded time it determined a private client would object to, wrote off the time of support staff, and reconciled inconsistent time entries by using the lowest possible entry. Muraskin Declaration, at ¶ 9. Further, while R-CALF is entitled to recover a portion of their attorney's fees for some of the time spent litigating the case beyond the preliminary injunction appeal because—at minimum—USDA continued to argue that the Checkoff program was constitutional "even before USDA entered into MOUs," *e.g.* Dkt. No. 99-0 at 7, in an effort to narrow issues and ensure the reasonableness of its attorney's fees, R-CALF has limited its fees to the time spent litigating the preliminary injunction through appeal. Ultimately, the time R-CALF seeks to recover is far less than the

time necessary to obtain and secure the result which rendered R-CALF a prevailing party under EAJA. Therefore, R-CALF is entitled to recover for those hours.

The attached log, Exhibit A to the Muraskin Declaration, details the $135,250.23 in attorney fees R-CALF incurred from the relevant time period (i.e. from case development through litigating the preliminary injunction appeal) based on the rates set by the Ninth Circuit for the year the work was performed. Exhibit A provides only the time R-CALF seeks to recover and not entries for which R-CALF is not seeking to recover.

### E.  **R-CALF Is Entitled to Fees for Time Spent Seeking Reasonable Fees and Costs**

R-CALF also seeks its time spent seeking fees. Time spent negotiating and litigating attorney fees and costs is recoverable. *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995). R-CALF drafted a letter detailing its fee demand and corresponded with USDA thereafter in an attempt to resolve the fee and cost dispute without success. Muraskin Declaration, at ¶ 3. The parties could not resolve any aspect of R-CALF's claim for fees and costs, nor was USDA willing to narrow the issues that required briefing. *Id*. Here, R-CALF is seeking only the time spent by Public Justice associate attorney Kellan R. Smith, Exhibit A, at 13-14, despite the fact that support staff assisted in compiling the fees and costs log, attached to the Muraskin Declaration as Exhibit A, and Public Justice Food Project Litigation Director David S. Muraskin reviewed and contributed to the briefing. *Id*.

at ¶ 9. Thus, the time R-CALF seeks to recover is less than the time necessary in order for it to secure its fees and costs under EAJA. Therefore, R-CALF is entitled to recover for those hours.

### F.   **R-CALF's Costs Are Reasonable**

EAJA authorizes an award of costs and other expenses. 28 U.S.C. §§ 2412(a)(1), 2412(d)(1)(A). Costs include filing fees. *Id*. § 2412(a) (citing 28 U.S.C. § 1920(1)). EAJA's other expenses include "costs that are ordinarily billed to a client," such as postage and attorney travel expenses. *Int'l Woodworkers, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985). As shown in the attached log, Exhibit A, at 16-17, R-CALF incurred $5,344.17 of costs from the relevant time period (i.e. from case development through litigating the preliminary injunction appeal) which are made up of travel costs, copying and printing costs, legal research costs, telephone costs, and court costs.

While *Wooten*, discussed above, *supra*, at 15, mentions that legal research costs are "typically 'baked into the hourly fee award'" and thus not compensable, 387 F. Supp. 3d at 1116, this is not true in a case such as this where the rate is capped below the prevailing market rates. Because *Wooten* is not an EAJA case and thus not subject to EAJA's statutory cap—but rather, one in which the rate was set by what is reasonable in the prevailing market—the *Wooten* court determined the rates themselves incorporated research costs, pursuant to the standard in the

18

community. R-CALF, in contrast, is proceeding under EAJA and has no other vehicle to "bake in" these costs. Thus, the Court should allow these costs as the "Ninth Circuit has allow[ed] the recovery of 'reasonable charges for computerized research'" under such circumstances. *Id.* (citing *Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006)).

Therefore, because R-CALF prevailed these costs and expenses should also be awarded.

## III.   CONCLUSION

For the foregoing reasons, R-CALF respectfully request that the Court grant its application for fees in the amount of $145,428.08 and for costs in the amount of $5,344.17.

RESPECTFULLY SUBMITTED this 10th day of September, 2020.

> PUBLIC JUSTICE, P.C.
> By: /s/ David S. Muraskin
> David S. Muraskin
>
> David S. Muraskin
> PUBLIC JUSTICE, P.C.
> 1620 L St. NW, Suite 630
> Washington, DC 20036
>
> William A. Rossbach
> ROSSBACH LAW, P.C.
> 401 North Washington St.
> Missoula, MT 59807-8988

J. Dudley Butler
BUTLER FARM & RANCH LAW
GROUP, PLLC
499-A Breakwater Dr.
Benton, MS 39039

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)

I hereby certify that this brief contains 4,459 words, excluding the caption, tables, and certificate. That word count was calculated using the Microsoft Word program used to write this brief.

By:        /s/ David S. Muraskin